<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
DARWIN TERRELL,                  :
                                 :   Civil Action No. 09-5762 (RBK)
              Plaintiff,         :
                                 :
                                 :
              v.                 :   OPINION
                                 :
PTL. ROGER LILLO, et al.,        :
                                 :
              Defendants.        :
```

**APPEARANCES:**

      DARWIN TERRELL, Plaintiff <u>pro</u> <u>se</u>
      650493/585572B
      Kintock Halfway House
      4 S. Industrial Blvd.
      Bridgeton, New Jersey, 08302

      JAMES R. BIRCHMEIER, ESQ.
      POWELL, BIRCHMEIER & POWELL, ESQS.
      1891 State Highway 50
      P.O. Box 582
      Tuckahoe, New Jersey 08250-0582
      Counsel for Defendants

**KUGLER**, District Judge

      THIS MATTER comes before the Court on the motion of defendants, Patrolman Roger Lillo, Patrolman Nino Cusella, and Patrolman Donald Boice, for summary judgment, pursuant to <u>Fed.R.Civ.P.</u> 56(c).  (Docket entry no. 43).  Plaintiff has not filed any opposition to defendant's motion.  This matter is being considered on the papers pursuant to <u>Fed.R.Civ.P.</u> 78.  For the reasons set forth below, defendants' motion will be granted.

I.   <u>BACKGROUND</u>

On or about November 12, 2009, plaintiff, Darwin Terrell ("Terrell"), filed a civil rights Complaint, pursuant to 42 U.S.C. § 1983, against defendants, Patrolman Roger Lillo, Patrolman Nino Cusella, and Patrolman Donald Boice, of the City of Wildwood Police Department.  (Complaint, Caption and ¶¶ 4b, c and e).

In his Complaint, Terrell alleges that, on or about January 31, 2008, defendant Cusella received an anonymous report that an armed man was in a barber shop.  Plaintiff contends that the description of the armed person did not in any way match plaintiff.  Defendants Cusella, Lillo and Boice went to the barber shop, but the armed man had left.  Defendant officers then went to the Sportsman's Tavern in search of the suspect.  Lillo spotted plaintiff from the tavern's sidewalk window.  Plaintiff was seated at a table, eating his dinner at the time.  Again, plaintiff contends that he did not match the description of the armed suspect.  However, Lillo entered the tavern and went directly to plaintiff, asking plaintiff for his identification.  Plaintiff complied.  Lillo then noticed two small plastic bags laying on the floor in the common walkway of the tavern.  Defendant officers arrested plaintiff and charged him with possession of crack cocaine.  Plaintiff states that his counsel made a motion to dismiss (arrest without probable cause), which

was granted on July 27, 2009.  (Compl., Statement of Claims).
The Complaint asserts a claim of false arrest without probable
cause under 42 U.S.C. § 1983.  Plaintiff also generally asserts a
claim of conspiracy to violate his civil rights under 42 U.S.C.
§§ 1985 and 1988.

After discovery was completed in this matter, defendants
filed a motion for summary judgment.  (Docket entry no. 43).  As
required under Local Civil Rule 56.1, defendants submitted a
Statement of Undisputed Facts taken from the Deposition
Transcript of Plaintiff (Defendants' Exhibit A, Docket entry no.
43-2); the Investigation Report of Officer Roger Lillo
(Defendants' Exhibit B, Docket entry no. 43-3); the Operation
Report of Officer Nino Cusella (Defendants' Exhibit C, Docket
entry no. 43-4); August 17, 2009 Motion Testimony of Officer
Donald Boice (Defendants' Exhibit D, Docket entry no. 43-5);
Arrest Report of Officer Lillo ("SEALED" - Defendants' Exhibit E,
Docket entry no. 43-6); Complaint/Warrant ("SEALED" - Defendants'
Exhibit F, Docket entry no. 43-7); and the Cape May County Grand
Jury Indictment No. 08-05-00321-I, filed May 6, 2008 (Defendants'
Exhibit G, Docket entry no. 43-8).

In his deposition, Terrell stated that his first contact
with the defendant officers from the City of Wildwood Police
Department occurred at approximately 5:00 p.m. on January 31,
2008, at the Sportsman"s Tavern in Wildwood.  (Defendants'

3

Exhibit A ["DE-A"], page 25).  The Sportsman's Tavern was located on New Jersey Avenue, across from Commissioner's Court, a housing complex.  (DE-A at pg. 27).  The barbershop that was located in this area was approximately a block away, on Lincoln Avenue. (DE-A at pg. 27).  The Sportsman's Tavern had double glass entry doors that opened to a foyer and another glass door.  Terrell was the first person seated near the second glass door.  He was at the second seat.  (DE-A at pp. 32-33).  At approximately 5:00 p.m., all three defendant officers came through the doors.  The officers were behind plaintiff and told Terrell to put his hands out so they could see them, and to not move.  (DE-A at pg. 34). One officer then asked Terrell to stand up, as they received a call about a man in possession of a gun and plaintiff fit the description.  (DE-A at pp. 34-35).

Officer Lillo told Officers Boice and Cusella to take plaintiff outside and search him.  They took Terrell outside, patted him down and searched him.  (DE-A at pg. 35).  Officer Lillo then came out of the bar and asked Officers Boice and Cusella if they had patted down and searched the plaintiff.  They indicated that they did.  At this point, Officer Lillo arrested plaintiff for possession of CDS.  (DE-A at pg. 35).  Officers Boice and Cusella put the handcuffs on Terrell without incident or injury to plaintiff during this arrest.  (DE-A at pg 38).

4

Officer Lillo's Investigation Report relates that, on January 31, 2008, at approximately 5:24 p.m., Lillo spoke with Officer Cusella and his partner, Officer Boice, regarding information that they had received from an anonymous concerned citizen about a subject possibly in possession of a handgun. (Defendants' Exhibit B ["DE-B"] at pg. 1).  Officer Cusella described the subject to Officer Lillo as a black male, approximately 6"1", approximately 30 years of age, and wearing a thick black jacket, possibly a Triple Fat Goose, which is a large puffy style down feathered jacket.  (DE-B at pp. 1-2).  Officer Cusella stated that the male was last seen at the barbershop, which was located in the Wildwood bowling alley complex at 3301 New Jersey Avenue.  The officers proceeded to respond to that location to check for the subject.  (DE-B at pg. 2).

The officers entered the barbershop and did not locate anyone fitting the description of the male that they were looking for.  The officers spoke with a barber who advised them that a subject fitting that description was just in the barbershop but had left, walking southbound on New Jersey Avenue.  The officers proceeded to check the area with negative results.  (DE-B at pg. 2).

The officers decided to walk through the Sportsman's Tavern, 3711 New Jersey Avenue, to check for the subject.  This area was considered a high crime/high drug area where controlled dangerous

substances ("CDS") were bought and sold on a regular basis. Officer Lillo had made numerous arrests for CDS in this area and had done extensive surveillance in this area leading to CDS arrests.  (DE-B at pg. 2).

Officer Lillo exited his patrol vehicle and walked to the front of the tavern in an attempt to see into the tavern so as not to let anyone inside see him.  Officer Lillo saw a black male wearing a large puffy style jacket consistent with a Triple Fat Goose style jacket, sitting at the southwest corner of the bar eating.  (DE-B at pg. 2).  Officer Lillo advised Cusella and Boice of his observations.  Officer Lillo then entered the front door.  As soon as he did so, the male looked up at him, stopped eating, dropped his utensils, and turned his entire body away from Officer Lillo, looked downward and fumbled with his hands in front of him like he was trying to discard or hide something. (DE-B at pg. 2).

Officer Lillo quickly walked up to the front portion of the subject and immediately told him to show his hands to the officer.  Officer Lillo then observed, in plain view, lying on the ground directly beneath the subject, a small baggie, which based on his training and experience, looked like a baggie of suspected CDS, heroin.  (DE-B at pg. 2).

The officers then asked Terrell for his identification and asked him to stand.  While doing so, Officer Lillo saw another

clear plastic baggie containing a white rocklike substance lying in the same area.  Based on his training and experience with narcotics investigation, this appeared to the officer to be CDS, crack cocaine.  The officers then escorted Terrell outside where Officer Lillo arrested plaintiff for possession of CDS, heroin and cocaine.  (DE-B at pg. 2).

Terrell was transported to Wildwood Police Department Headquarters, where he was processed.  While at headquarters, Terrell asked to speak with Officer Lillo in reference to this matter.  Officer Lillo advised Terrell of the charges and Terrell stated that he was not in possession of the suspected CDS. Terrell said that he knew the CDS was underneath him but it was not his and that he did not throw it to the ground, which was what Officer Lillo believed Terrell had done because Terrell had stopped eating, turned himself away from the officer, and fumbled with his hands in front of him like he was attempting to hide something or discard something when the officer entered the door. (DE-B at pg. 2).

Officer Lillo learned that plaintiff was a drug dealer, specifically crack cocaine and heroin.  Based on Lillo's experience with narcotics investigation, it was common for street level dealers to not carry the CDS on their person but to have it a short distance from themselves so if they were stopped by the

police, they would have a defense as to the CDS was not in their possession.  (DE-B at pg. 2).

In his Operation Report, defendant Cusella stated that, on January 31, 2008, he was on patrol in the City of Wildwood, when he was approached by a subject who wished to remain anonymous. (Defendants' Exhibit C ["DE-C"] at pg. 1).  The subject informed Cusella that he was at the barbershop near the bowling alley, 3501 New Jersey Avenue, several minutes ago, getting a haircut. During that time, he overheard a conversation between two subjects.  One of the male subjects, who identified himself as street name "Leek" made a remark that he was in Wildwood to "take care of somebody."  The unknown subject "Leek" then lifted his jacket up and showed the other subject that he had a handgun hidden in his waistband.  (DE-C at pg. 1).  "Leek" was described as a black male, dark complexion, approximately 6 feet tall, mustache, wearing a black jacket, possibly Triple Fat Goose, and dark pants.  (DE-C at pg. 1).  The informant indicated that as "Leek" was showing the other unknown subject the handgun, the informant was able to see the handgrip to the gun, which he indicated was black in color.  Because "Leek" quickly lifted up his jacket, he was unable to see what make or model the gun was, but the informant was positive that the gun was real and had a black handle.  (DE-C at pg. 1).

The description of the subject was given out to all patrol units in the area with negative results at the time.  Cusella was familiar with the subject by the name of Kellic Terrell, who had been known to use the nickname "Leek."  Mr. Terrell fitted the description, and had been known to frequent that barbershop.  (DE-C at pg. 2).

On August 17, 2009, defendant Boice had testified at a motion hearing in Terrell's state criminal matter concerning the events leading up to plaintiff's arrest.  Boice testified that on January 31, 2009, he was working in his capacity as a uniformed patrol officer for the City of Wildwood.  His shift began at approximately 3:00 p.m., and it was scheduled to end at 11:00 p.m.  (Defendants' Exhibit D ["DE-D"] at pg. 8).  Boice had recently graduated from the Police Academy, and he was working with Officer Cusella for training purposes.  (DE-D at pp. 8-9).

Boice and Cusella were patrolling the area at Young's and New Jersey Avenue, when they were approached by a concerned citizen.  The citizen mentioned that he observed a male subject, approximately 6 feet tall, approximately 30 years old at a local barbershop.  While the citizen was inside the barbershop, this subject lifted his shirt up and the citizen saw the butt of a handgun in the subject's waistband.  The concerned citizen further described this individual as average build, and wearing a black puffy Triple Fat Goose jacket.  (DE-D at pg. 9).  The

concerned citizen identified the barbershop, which was located
next to Model Cleaners, on the 100 east block of Schellinger
Avenue.  The citizen then left on foot, as he did not want to be
seen talking to the police officers anymore than he had to be.
(DE-D at pg. 10).

After receiving this information from the concerned citizen,
Cusella notified dispatch of their location, and another officer,
Officer Lillo, responded with them to the barbershop so the
officers could identify the subject, or locate him.  (DE-D at pp.
10-11).  At the barbershop, the officers spoke to one of the
employees.  The employee was aware of what the officers were
talking about.  The employee said that the subject was in the
barbershop, but he had left about 10 minutes before the officers
got there, and the employee did not know in what direction the
subject had gone.  (DE-D at pg. 11).

The officers searched the immediate area for approximately 5
to 10 minutes, but could not locate the subject fitting the
description.  Lillo called Cusella over the radio, and Lillo
stated that he was going to check out the Sportsman's Tavern,
which was located across the street from the barbershop.  Cusella
relayed the information from the concerned citizen to Lillo.
(DE-D at pg. 11).

Boice and Cusella met Lillo in the parking lot of the
Sportsman's Tavern.  Lillo looked in the window of the tavern.

10

Neither Boice nor Cusella looked through the tavern window.  (DE-D at pp. 39-40).  Lillo stated to Cusella and Boice that he saw a black male subject eating at the bar and he was wearing a black puffy jacket.  At that point, all three officers walked into the Sportsman's Tavern.  (DE-D at pg. 41).  Lillo walked up behind Terrell and asked Terrell to keep his hands where the officer could see them.  Lillo also asked for plaintiff's identification.  (DE-D at pg. 43).  At this point, Cusella was right behind Lillo, and Boice was behind Cusella.  (DE-D at pg. 44).

When Lillo approached Terrell, Terrell was seated at the right side of the bar, approximately five seats down.  Terrell was seated close to the door entrance, and there were no other persons between him and the door.  (DE-D at pp. 48-49).

In the arrest warrant (Defendants' Exhibit F ["DE-F"]), probable cause for plaintiff's arrest was stated to be based on Officer Lillo's observation of Terrell dropping two small baggies of suspected CDS on the floor of the bar after Lillo had walked in to look for a subject.  Probable cause was found for the issuance of this complaint by Hon. David S. DeWeese, J.M.C., and bail was telephonically authorized by the Judge and set in the amount of $25,000., full cash bail.  (DE-F).

On or about May 6, 2008, a Cape May County Grand Jury issued an indictment against plaintiff, Terrell, stating that, on or about January 31, 2008, in the City of Wildwood, County of Cape

May, Terrell "did unlawfully and knowingly or purposely possess a controlled dangerous substance, namely, cocaine, Schedule II; contrary to the provision of N.J.S. 2C:35-10A[1]."  (Defendants' Exhibit G ["DE-G"].

In their motion for summary judgment, defendants contend that summary judgment is warranted because there was probable cause for plaintiff's arrest, thus defeating plaintiff's false arrest claim.  Defendants also argue that they are entitled to qualified immunity.

Plaintiff has not responded to defendants' motion for summary judgment.[1]  Accordingly, because Terrell has not submitted a responsive statement of material facts in dispute, the material facts asserted by defendants, (Docket entry no. 43), shall be deemed undisputed.  L.Civ.R. 56.1(a).

## II.   DISCUSSION

### A.   Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c);

---

[1]  It would appear that Terrell has been released from state custody on or about December 26, 2011.  (Docket entry no. 44). However, Terrell has not informed the Court of a new address and mail that has been sent to him has been returned.  (Docket entry no. 46).  Plaintiff is obligated to inform the Court of any change in address.  See Local Civil Rule 10.1.  Failure to so inform the Court may result in the dismissal of this action for failure to prosecute.  Id.

see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir.
1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n. 3
(3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v.
Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The
threshold inquiry is whether "there are any genuine factual
issues that properly can be resolved only by a finder of fact
because they may reasonably be resolved in favor of either
party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250
(1986)(noting that no issue for trial exists unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict in its favor).  In deciding whether triable
issues of fact exist, the Court must view the underlying facts
and draw all reasonable inferences in favor of the non-moving
party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63
F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811
F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides,
in relevant part:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon
> the mere allegations or denials of the adverse party's
> pleading, but the adverse party's response, by affidavits or
> as otherwise provided in this rule, must set forth specific
> facts showing that there is a genuine issue for trial. If
> the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented ... by depositions, answers to interrogatories, or further affidavits," id. at 322 n. 3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247–48 (stating that "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific
facts showing that there is a genuine issue for trial.'"
Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife
Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of
[Rule 56(e)] is not to replace conclusory allegations of the
complaint ... with conclusory allegations of an affidavit.");
Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am.,
Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied,507 U.S.
912 (1993)(stating that "[t]o raise a genuine issue of material
fact, ... the opponent need not match, item for item, each piece
of evidence proffered by the movant," but must "exceed[ ] the
'mere scintilla' threshold and ... offer[ ] a genuine issue of
material fact.").

The Local Civil Rules supplement the Federal Rules of Civil
Procedure and provide that "each side shall furnish a statement
which sets forth material facts as to which there exists or does
not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a
single joint Rule 56.1 statement is favored." Allyn Z. Lite, New
Jersey Federal Practice Rules 192 (2006 ed.) (citations omitted).
"Where a joint statement is not prepared, then, under the rule,
'facts submitted in the statement of material facts which remain
uncontested by the opposing party are deemed admitted.'" Id. at
193 (citations omitted). However, "the parties' statements
pursuant to Local Rule 56.1 "cannot bind the Court if other

evidence establishes that the stipulated facts are in error."
Id. (citation omitted).

C.   Failure to State a Claim for False Arrest

Terrell's primary claim is that the defendants violated his civil rights by arresting him without probable cause.  An arrest without probable cause is a Fourth Amendment violation actionable under § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also Albright v. Oliver, 510 U.S. 266, 274 (1994)(§ 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  To state a Fourth Amendment claim for false arrest, a plaintiff must allege that: (1) there was an arrest; and (2) the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F. Supp.2d 743, 755 (D.N.J. 1999)(citing Groman).  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Adams v. Officer Eric Selhorst, 2011 WL

5068087, at * 2 (3d Cir. October 26, 2011)(citing <u>Orsatti v. N.J.</u> <u>State Police</u>, 71 F.3d 480, 483 (3d Cir. 1995)).

A claim for false arrest, "covers [ ] only [ ] the time of detention until the issuance of process or arraignment, and not more." <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 (3d Cir. 1998) (citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994)). <u>See also</u> <u>Singleton v. DA Philadelphia</u>, 411 Fed. Appx. 470, 472 (3d Cir. 2011)(ruling that accrual of a claim for false arrest occurred on the date that the plaintiff "was arrested and charges were filed against him"); <u>Alexander v. Fletcher</u>, 367 Fed. Appx. 289, 290-91 (3d Cir. 2010)(affirming the district court's conclusion that a § 1983 false arrest claim began to accrue on the date of arrest). Therefore, in this case, Terrell's claim accrued on the date that he was arrested and charges were filed against him, namely, on or about January 31, 2008. <u>See</u> <u>Singleton</u>, 411 Fed. Appx. at 472; <u>Alexander</u>, 367 Fed. Appx. at 290-91.

Here, Terrell appears to allege that there was no probable cause to arrest him, that the officers had no arrest warrant, and that the evidence they used to charge him was later suppressed by the state criminal court on or about July 27, 2009, and the charges were dismissed against plaintiff accordingly.[2]   The

_____

[2]   The Court notes that defendants have provided a portion of a transcript of a motion proceeding in state court that occurred on August 17, 2009.  One of the motions before the state court was a motion to dismiss the indictment, and the portion of the transcript provided by defendants include the testimony of defendant Boice regarding the events of the arrest.  However, the defendants failed to provide the full transcript which would have included the state court's ruling on the motion to dismiss the

defendants counter plaintiff's claim by showing that a state municipal court judge found probable cause for the issuance of a complaint warrant against Terrell and that probable cause was established by the grand jury's indictment against Terrell.

The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.  See Gerstein v. Pugh, 420 U.S. 103, 114 (1975).  Here, defendants show that Officer Lillo presented information to the municipal court judge in the warrant/complaint for Terrell's arrest.  Municipal Court Judge David DeWeese found probable cause for the issuance of the warrant/complaint against Terrell, thus validating Lillo's determination of probable cause. "One of the reasons for requiring a neutral [judge] to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead." Wilson v. Russo, 212 F.3d 781, 787 (3d Cir. 2000); see also Johnson v. United States, 333 U.S. 10, 13-14 (1948)(stating that "[t]he point of the Fourth Amendment ... is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence," but rather that "its protection consists of requiring that those inferences be drawn by a neutral and detached [judge] instead of being judged by the

---

indictment.  While the Court finds the defendants' partial disclosure to be somewhat disingenuous, the date of the motion proceeding would seem to discredit plaintiff's allegation that the charges were dismissed on July 27, 2009, as the motion proceeding had occurred on August 17, 2009.

officer engaged in the often competitive enterprise of ferreting out crime.").

Moreover, Terrell has not shown that defendant Lillo, in presenting the warrant to the municipal court judge, "'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant' and "such statements or omissions are material, or necessary, to the finding of probable cause.'" Lincoln v. Hanshaw, No. 09-2683, 2010 U.S.App. LEXIS 5951, at *9, 2010 WL 1049384 (3d Cir. 2010)(quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)); see also Wilson, 212 F.3d at 786 (stating that in order to establish a prima facie case of false arrest, where that arrest was warranted, the plaintiff must demonstrate "that defendants recklessly disregarded the truth in their warrant application and that a warrant application based on what defendants should have told the judge would have lacked probable cause."). Absent such a showing, the warrant application establishes probable cause on its face. Lincoln, No. 09-2683, 2010 U.S.App. LEXIS 5951, at *8, 2010 WL 1049384; see also Shepherd v. Ambrosino, 2010 WL 2802238 at *4 (D.N.J. July 15, 2010). Accordingly, in this instance, where defendants have shown that Terrell's arrest was made pursuant to a warrant supported by probable cause, it is presumed lawful. See Wilson, 212 F.3d at 786.

Moreover, the grand jury's indictment of Terrell further establishes probable cause for Terrell's arrest on January 31, 2008.  See Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 363 (3d Cir. 2003)(stating that a defendant can demonstrate prima facie evidence of probable cause through the existence of a Grand Jury indictment).  See also Pittman v. McDuffy, 240 Fed. Appx. 524, 527 n. 6 (3d Cir. 2007)(a grand jury indictment constitutes prima facie evidence of probable cause to prosecute)(citing Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989)); Knight v. Borough of Penns Grove, 50 Fed. Appx. 92, 94 (3d Cir. 2002); Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 251 (3d Cir. 2001)(a grand jury indictment  "establishes probable cause by definition....").

Therefore, under the circumstances and undisputed facts as demonstrated here, this Court finds that there was probable cause for Terrell's arrest, and summary judgment will be granted in defendants' favor, dismissing plaintiff's false arrest claim for failure to state a claim.

Finally, Terrell's conspiracy claim against the defendants under 42 U.S.C. §§ 1985 and 1988 will be dismissed because there was probable cause for plaintiff's arrest and plaintiff has failed to allege any facts or evidence to support his bald and conclusory conspiracy claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(threadbare recitals of the elements of a cause of

action or mere conclusory statements do not suffice to state a plausible claim for relief).

III.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, defendants' motion for summary judgment will be granted, and this action will be dismissed in its entirety with respect to all named defendants, for failure to state a claim upon which relief may be granted.  An appropriate order follows.


<u>s/Robert B. Kugler</u>
ROBERT B. KUGLER
United States District Judge

Dated: June 20, 2012